**DELTA ELECTRIC CONSTRUCTION COMPANY, INC.**

v.

**UNITED STATES of America.**

**Civ. No. SA–74–CA–120.**

United States District Court,
W. D. Texas,
San Antonio Division.

March 31, 1976.

George W. Krog, San Antonio, Tex., for plaintiff.

Henry Valdespino, U. S. Atty., San Antonio, Tex., for defendant.

## MEMORANDUM OPINION

CLARY, Senior District Judge.

This case arises out of a contract between the plaintiff and defendant for plaintiff's installation of electrical duct and appurtenant facilities at Bergstrom Air Force Base, Austin, Texas. The contract between plaintiff and defendant included a value engineering incentive clause as Clause 64 of its General Provisions. By letter dated January 3, 1974, plaintiff submitted to defendant a value engineering incentive proposal under which plaintiff

proposed to furnish a readily available commercial standard size precast manhole of slightly different dimensions than those specified in the contract specifications and drawings for a reduction in the contract performance cost of $1,400.00. On February 7, 1974, plaintiff was advised by defendant's district value engineering officer that the proposal had been approved subject to negotiation of change order and savings and was being forwarded to defendant's construction division with the recommendation that a value engineering change order be issued. Upon recommendation of the district value engineering officer, plaintiff's proposal was approved by the contracting officer on February 11, 1974, subject to negotiation of the change order and savings. On February 8, 1974, the district value engineering officer requested that a government estimate on plaintiff's proposal be prepared and furnished to the construction division. Sometime between March 6 and March 9, 1974, the government's electrical estimator, Wendell H. Lester, received the assignment to prepare the government estimate. The government's estimator was instructed to prepare an estimate based upon a comparison of costs of a precast manhole and a manhole poured in place. The time required to prepare a construction cost estimate such as the government's estimate in this action requires from 30 minutes to ½ a day to reduce to writing. (Evidence at trial conclusively proved that it would take at least a full week to gather the necessary material to put it in writing.) The government's estimate was completed and forwarded to the construction division on March 11, 1974. Representatives of plaintiff and defendant met March 21, 1974, to negotiate the savings to be realized by plaintiff's proposal. At the conference of March 21, 1974, the representatives of the parties were unable to reach any agreement or to reconcile any portion of the difference between the government's estimate of $11,956.00 and the plaintiff's estimate of $1,400.00. Following the conference of March 21, 1974, the government's representative reviewed the government's estimate, determined that it was too high and, on March 25, 1974, telephoned plaintiff's representative to advise that the government's estimate had been cut in half, but such reduced estimate was still not acceptable to plaintiff. Plaintiff thereupon, without further ado, requested the contracting officer to forward him a letter refusing to issue any change order in this case with reference to the value engineer incentive clause. By letter dated April 2, 1974, the contracting officer advised plaintiff that its proposal had been reviewed and found technically acceptable except for two (2) minor changes but that plaintiff's estimate of the reduction in performance cost of $1,400.00 was not considered an equitable adjustment and therefore plaintiff's proposal was not approved.

■ The background of this whole situation was disclosed by the testimony of the plaintiff's president and chairman of the board, Marshall Donaldson. He testified that this company was organized in his living room in the year 1961 with the main idea of doing electrical construction work for the Engineering Corps of the United States Army and since that time over 90% of his business and the business of the company was with the Corps of Engineers of the United States Army. He also testified very frankly that this proposal on his part, a reduction in price of $1,400.00 of the contract price was merely for the purpose of finding out of what value to them was Clause 64 of the general provision of the contract (value engineering incentive clause). When the Corps of Engineers first talked of a 10% reduction in the contract the actual contract price was $114,500.00 as against a 1% reduction on the part of the contractor, it was clear that the discrepancy was as the civil engineer employee frankly stated, "out of the ball park." Thereafter, based on figures of similar jobs of which the Corps of Engineers had full statistics to make comparisons, he determined that the savings should approximate $5,800 or $5,900 but that subject was still open to negotiations. When this information was relayed to the contractor in pursuit of his plans to test the effect of the incentive clause he requested a formal disapproval of his offer.

From the foregoing recitation of facts, it is clear that this proposal was made with the prospect of litigation to follow and made in such a way that the contractor would not be in the slightest degree inconvenienced or lose any money. It is almost a classic "moot court" law school problem that he attempted to create. The suit was not started in good faith, the contractor did not negotiate in good faith and the whole proceeding is a sham and a fraud. Under the circumstances there is no need to discuss the law of the case. Any Hornbook series would furnish ample authority to sustain the proposition that a suit brought under these circumstances not only should be dismissed, but with all allowable costs being charged back against the plaintiff. The foregoing Memorandum shall represent the findings of fact of the Court pursuant to the Federal Rules of Civil Procedure.

CONCLUSIONS OF LAW

1. The Court has jurisdiction of this suit under Title 28, U.S.Code, Section 1346(a)(2).

2. Defendant did not breach its duty to process plaintiff's value engineering proposal expeditiously.

3. Defendant did not breach its duty to evaluate plaintiff's value engineering proposal objectively.

4. Defendant did not breach its duty to negotiate in good faith the savings to be realized from plaintiff's value engineering proposal.

5. Plaintiff, itself, failed to negotiate in good faith the savings to be realized from its value engineering proposal.

6. Plaintiff's suit was not brought in good faith, and being a sham, it is dismissed with prejudice, plaintiff to bear all allowable costs.

7. Judgment is to be entered for defendant.